## DAUGHTREY et al. v. McCOY.

(Court of Civil Appeals of Texas. March 11, 1911.)

1. BOUNDARIES (§ 3*) — ASCERTAINMENT— CALLS FOR DISTANCE AND QUANTITY CONTROLLED BY CALLS FOR NATURAL OBJECTS.

The general rule as to descriptions is that a call for a natural object will control calls for distance and for quantity, and an excess of 105 acres in a survey of 1,280 acres is not so great as to require an exception to such rule.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 3–41; Dec. Dig. § 3.*]

2. BOUNDARIES (§ 6*) — ASCERTAINMENT—REVERSAL OF CALLS IN FIELD NOTES.

Calls in the field notes of a survey may be reversed, when a call for a posterior line is more definite than the first line, and more clearly shows the footsteps of the surveyor; but otherwise the calls should be followed in the order given in the field notes.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 47–57; Dec. Dig. § 6.*]

Appeal from District Court, Jones County; C. C. Higgins, Judge.

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

Action by Mary F. Daughtrey and others against E. A. McCoy. Judgment for defendant, and plaintiffs appeal. Reversed and rendered.

Thomas & Chapman and Sayles & Sayles, for appellants. A. H. Kirby, for appellee.

DUNKLIN, J. The only issue involved in this suit was whether or not 54⁴/₁₀ acres of land, the land in controversy, was a part of the west half of the Maria Rita Longoria survey, which was owned by appellants, plaintiffs in the court below. The case was tried without a jury, and the trial court filed the following as his findings of fact and conclusions of law:

"Upon application of the plaintiff the court finds the following facts, to wit: That the part of the survey of land in controversy, to wit, the Maria Rita Longoria survey No. 258, in Jones county, Texas, gives the field notes of said survey as follows: 'Beginning at a stone, the patent corner of survey No. 257, from which a hackberry brs. N. five degrees W., 40 vrs., an elm brs. N. 37 degrees W., 16 vrs.; thence S. 15 degrees E., 5,162 varas, to stake and mound; thence S. 75 degrees W., 1,318 varas, to stake and mound; thence N. 15 degrees W., 5,902 varas, to a stake, from which a cluster of mulberry trees bears S. 16½ degrees W., 8 varas, a hackberry bears S. 33 degrees E., 30 varas; thence down the river with its meanders to the place of beginning. Bearings marked "X" dated July 18, 1853.'

"(2) That survey No. 257 is not now on the map, but that in its place has been laid surveys Nos. 1, 2, and 3, in block No. 17, Texas & Pacific Railway Company, Jones county, Texas.

"(3) I find that either the east line of survey No. 258 in controversy is 491½ varas short, or the west line of the same survey is 491½ varas too long, and the controversy in this case is based upon that discrepancy. The plaintiffs own the west one-half of survey No. 258, and the defendants own survey No. 4, Texas & Pacific Railway Company, block 17, bounded on the south with 258.

"(4) That if the east line of the Maria Rita Longoria survey No. 258, as called for by the patent, 5,162 varas, is extended its full length, and the survey constructed based upon its length, it will contain an excess of 105 acres in survey whose certificate calls for 1,280 acres; but if the survey is constructed by beginning at the northeast corner of the Maria Rita Longoria No. 258 to reverse the calls and meanderings of the river to the northwest corner as identified on the ground from the stumps of the mulberry clump of trees, and giving the west boundary line its full length as called for in the patent, and construct the survey either from the northeast corner, and reversing the call with the meanders of the river, and around to the place of beginning, or beginning at the northwest corner and reversing the call around to the place of beginning, the survey will contain four-tenths of an acre less than the amount called for in the original certificate, and, locating further, the east line will be 491.5 varas short of the calls in the original field notes when it comes to the river at the place of beginning called for in the original patent.

"(5) I find that the northeast corner of Maria Rita Longoria No. 258 is established on the ground from the northeast corner of the J. J. Hughes survey No. 268, and there is no controversy as to the present location of the northeast corner of this survey.

"(6) The beginning corner of No. 268 is the northeast corner, and in 1874 Murry Harris, the original locator of the Texas & Pacific Railway Company surveys in block 17, located survey No. 1 on what he took to be the northeast corner of the Maria Rita Longoria No. 258, and the west line of said survey No. 1 for the Maria Rita Longoria, 1,937½ varas, and the west line of survey No. 2, same block, calls for the east line of the Maria Rita Longoria 2,012½ varas, and the west line of survey No. 3, same block, calls for the east line of the Maria Rita Longoria 1,212 varas, making a full length of 5,162 varas, as called for in the original field notes of the Maria Rita Longoria; but the same surveyor, after running 140 varas from the last-named point, at what he called for the southeast corner of the Maria Rita Longoria No. 258, ran south 409 varas to the north line of survey No. 20, same block, when in fact and in truth the distance between the Maria Rita Longoria and survey No. 20, when located as contended for by the plaintiffs, is only 174 varas.

"(7) That the field notes of survey No. 4, Texas & Pacific Railway Company, calls for the southwest corner of the Maria Rita Longoria.

"(8) The plaintiff showed the title to the west one-half of the Maria Rita Longoria.

"From the above and foregoing findings of facts, I therefore conclude as a matter of law, there being a conflict in the field notes and the location as it exists on the ground, and being able to construct the survey by reverse calls giving its quantity of land called for in the original field notes, without any excess in acreage, I have constructed the survey by beginning at the northeast corner of the Maria Rita Longoria, about which there is no controversy, and reverse the calls, meandering the river toward the west, and running the west line toward the south its course and distance called for in the original field notes, on the south line toward the east its course and distance called for in the field notes, on the east line toward the north to the river at the original beginning corner, and conclude that the east line is short 491½ varas."

We adopt the court's findings of fact, but are of the opinion that upon the same judg-

ment should have been rendered in favor of appellants, rather than in favor of appellee. It will be noted from the findings that the northeast and northwest corners of the survey in question are established on the ground, and that the only reason why the court concluded that the calls should be reversed, and the east line of the survey as called for in the field notes should be shortened 491⁵/₁₀ varas, was that the survey contained an excess of 105 acres if constructed by giving the east boundary line the full length called for in the patent. It will be noted, further, that the northeast corner was the beginning corner of the survey, and that the east boundary line was the first line called for in the field notes. The record fails to show that either the southeast or the southwest corner, as originally established on the ground, can now be ascertained, and the record further shows that the east and west boundaries were unmarked lines.

If the east boundary line be given the distance called for in the patent, and the southwest corner of the survey be established by running S. 75° W. 1,318 varas from the southeast corner, as called for in the patent, then the next call for the west boundary line of the survey would extend that line to the river, even though it required a greater distance to do so than the 5,902 varas called for in the patent; [1] for the general rule is well established that a call for natural objects will control a call for distance and also for quantity, and the excess of 105 acres in the survey in controversy of 1,280 acres is not so great as to require an exception to be made to that rule. Buford v. Gray, 51 Tex. 336; McAninch v. Freeman, 69 Tex. 446, 4 S. W. 369; Rand v. Cartwright, 82 Tex. 404, 18 S. W. 794; Maddox Bros. & Anderson v. Fenner, 79 Tex. 279, 15 S. W. 237; Freeman v. Mahoney, 57 Tex. 626. [2] It is true that the calls in the field notes of a survey may be reversed, when a call for a posterior line is more definite than the first line, and more clearly shows the footsteps of the surveyor. Otherwise the calls should be followed in the order given in the field notes. Den v. Graham, 18 N. C. 76, 27 Am. Dec. 228; Tucker v. Satterthwaite, 123 N. C. 511, 31 S. E. 724.

By a cross-assignment appellee complains of error in the court's finding that the survey in controversy is established on the ground from the northeast corner of the J. J. Hughes survey No. 256. There is no merit in this assignment, for the reason that the findings show that the northwest corner of the survey was established on the ground, and the location of the northeast corner is in conformity with that corner and other calls in the field notes.

The judgment of the trial court is reversed, and the judgment is here rendered in favor of appellants.