CITY OF LAREDO v. DE MORENO et al. (No. 5606.)

(Court of Civil Appeals of Texas. San Antonio. Feb. 16, 1916.)

1. ADVERSE POSSESSION ⊜⇒9—OPERATION OF LIMITATIONS—TITLE OF MUNICIPAL CORPORATIONS.

Limitations run against the title of a city acquired by patent from the state as they would had it acquired land by purchase from an individual.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 42, 50; Dec. Dig. ⊜⇒9.]

2. ADVERSE POSSESSION ⊜⇒8—OPERATION OF LIMITATIONS—TITLE OF MUNICIPAL CORPORATIONS—STREETS.

Under Rev. St. 1911, art. 5683, providing that no person shall acquire by adverse possession any title to any portion of any street belonging to any city or which shall have been dedicated for public use to any city, where a city has platted all the land granted to it into lots, blocks, streets, and avenues, and sold lots with reference to the plat, limitations do not run against it as to the streets shown on the plat.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 14, 27, 43–57; Dec. Dig. ⊜⇒8.]

Appeal from District Court, Webb County; J. F. Mullally, Judge.

Action by Nidia Benavides de Moreno and another against the City of Laredo. From a judgment for plaintiffs, defendant appeals. Affirmed.

A. Winslow, of Laredo, for appellant. Greer & Hamilton, of Laredo, for appellees.

MOURSUND, J. Appellees on April 1, 1915, sued appellant in trespass to try title to recover a certain tract of land described in the petition by metes and bounds, and including 19 entire city blocks and portions of 9 other city blocks, the numbers of all of which are stated in the petition. Appellee pleaded title under the 10-year statute of limitation. Appellant answered by plea of not

guilty. The court rendered judgment in favor of appellee for all the land sued for except the streets and avenues between the blocks, as to which judgment was entered that the city recover the same as public easements subject to its orders and the opening thereof whenever the city decides that a necessity exists therefor.

The city of Laredo was duly incorporated in the year 1848, and has ever since remained an incorporated city under the laws of this state. About 1756, the government of Spain established the town of Laredo, and granted to same a tract of land four leagues square, about three-fifths of which lies on the Texas side of the Rio Grande and within the corporate limits of the city of Laredo, Tex., and includes the land in controversy in this suit. The portion of said grant on the Texas side of the Rio Grande was patented to said city by the state of Texas in the year 1884. After Texas was admitted into the United States, the city of Laredo procured, and is now acting under, a charter for cities of more than 2,000 inhabitants. All who own title to their property in the city of Laredo, by regular chain of title from the sovereignty of the soil, hold under a deed or deeds, originally executed by the proper officers of said city and by mesne conveyances thereunder. Said city has the title to the property in controversy, unless it has been defeated by the possession, claim, and use of plaintiffs, as hereinafter set forth, under their plea of limitation of ten years.

About the year 1878, the city of Laredo platted all of its land, so granted it by Spain, into lots, blocks, streets, and avenues, including the lands in controversy; but the original map has been mislaid, lost, or destroyed. All maps of the city now extant, and those in use for more than 20 years, show that all of said grant is in the incorporated limits of the city, and that all of said grant, including the land in controversy, has been for more than a quarter of a century platted into lots, blocks, streets, and avenues. All that part of said grant situated in the vicinity of the land in controversy has for a very great length of time been used for farming and grazing of stock without reference to the streets or avenues platted as above stated, and no part of the land in controversy or in the immediate vicinity has ever been used by the city for any purpose. The city has never opened or in any way used any of the streets and avenues of any of the property in controversy. Said property and that contiguous thereto has never been used for any purpose other than for farming or grazing, for which purposes it has been used for many years and is now used, and such use has always been, and is now, without reference to any street or avenue delineated on the maps of the city, as no street or avenue has ever been opened on said lands.

In the year 1898, Jose Maria Moreno, whose title is held by plaintiffs, fenced all the land in controversy and continuously used the same for grazing purposes up to the time of his death, and plaintiffs continued to hold possession of and use same up to the time of the trial. As no question is raised concerning the sufficiency of such possession and use to show title under the 10-year statute of limitations, if limitation runs against the city, we will omit the details concerning such possession and use.

The land in controversy is about three miles east of the center of the city, and is about one mile beyond the suburban residence. While south of the Texas Mexican Railway "there are many residents, houses, and farms extending as far east as the land in controversy, there are only three or four of such residents, houses, and farms on the north side of the railroad and between the land in controversy and the suburban residents of the city. There are one or two small farms adjoining the land in controversy on the west, and three or four on the north. But none of these settlements are what may be termed 'urban,' to contradistinguish them from 'rural,' settlements."

A map showing the portion of the city grant inclosed by plaintiffs was introduced in evidence.

[1] Appellant contends that the court erred in adjudging to appellees any portion of the land sued for, its theory being that:

"The city of Laredo is such a sovereign of all the lots and blocks of land situated within its corporate limits as to place it beyond the pale of, and exempt from the operation of, the 10-year statute of limitation."

We are unable to see any reason for holding that the city of Laredo holds any different title to its lands than any other city operating under a similar charter. Limitation runs against said city just as it would against it had it acquired its land by purchase after it had been granted to an individual by the state.

Appellant's assignments of error are therefore both overruled.

[2] Appellees, by cross-assignments of error, contend that the court erred in holding that they did not establish title by limitation to the streets delineated on the map. They seek to avoid the effect of article 5683, R. S. 1911, adopted in 1887, on the theory that the city, under the facts proven, never dedicated the streets in such manner that it could not at any time have repudiated the map and sold the land as acreage property, without reference to the map. While the property was urban property in fact, the city had in 1878 made a map showing the division thereof into lots, blocks, and streets. It sold lots with reference to said map, and the city has grown to considerable size, as is shown by the fact that, while this land is three miles from the center of the city, it is only one mile from the suburban residences, and south of this land there are many residences as far east as this land.

We do not think the city is in the attitude of a person who subdivides his land but does not record the plat thereof and makes no sales with respect to the streets delineated on the plat. The map of the city of Laredo had entered into and become a part of the sale of all lots described by reference to such map. Such purchasers had the right to insist that all parcels of land delineated on such map as streets should in fact be streets. It was not necessary that all streets should be actually opened up and worked at once. As was said by the Supreme Court, in the case of City of Corsicana v. Zorn, 97 Tex. 323, 78 S. W. 925:

"It was not expected that the streets and alleys should all be opened at once, but, as is well known in the history of such transactions, many years might elapse before the settlement of that part of the city would require the use of such streets."

There is no evidence that the city ever undertook to revoke the dedication of the streets, and mere nonuser would not set in motion the statute of limitations. If the right to revoke should be held such an interest in the parcels of land delineated as streets as could be acquired by limitation, or such a right should be held to so affect the streets as to remove them from the provisions of article 5683—which we do not hold—then we say the evidence in this case is insufficient to show that the city had such right of revocation at the time plaintiff's ancestor took possession of the land, or any time thereafter. Lamar County v. Clements, 49 Tex. 355; City of Corsicana v. Zorn, 97 Tex. 317, 78 S. W. 924; Martinez v. City of Dallas, 102 Tex. 54, 109 S. W. 289, 113 S. W. 1167; City of San Antonio v. Rowley, 48 Tex. Civ. App. 376, 106 S. W. 753; Spencer v. Levy, 173 S. W. 557.

We conclude that the court did not err in holding that plaintiffs were not entitled to recover the streets. Strictly speaking, the judgment is incorrect in providing for the recovery by the city of the streets, there being no affirmative relief asked; but, as the legal effect of a provision that the plaintiffs take nothing as to their suit for the streets is the same as the effect of the judgment actually entered, we deem it unnecessary to reform the same.

The judgment is affirmed.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes